UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SHAWNDEL JOHNSON,

                    Petitioner,
        v.

                                                        9:13-CV-0810
WILLIAM LEE,                                             (GLS)

                    Respondent.
_____

APPEARANCES:                          OF COUNSEL:

SHAWNDEL JOHNSON
Petitioner, pro se
11-A-0224
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

HON. ERIC T. SCHNEIDERMAN            MICHELLE ELAINE MAEROV, ESQ.
Attorneys for Respondent             Ass't Attorney General
New York State Attorney General
120 Broadway
New York, New York 10271

GARY L. SHARPE
Chief United States District Judge

## DECISION AND ORDER

## I.    INTRODUCTION

        Petitioner Shawndel Johnson filed a petition for a writ of habeas corpus, pursuant to

28 U.S.C. § 2254, challenging a 2010 judgment of conviction, in Schenectady County Court,

of criminal sale of a controlled substance in the third degree (N.Y. Penal Law ("Penal Law") §

220.39(1)) and criminal possession of a controlled substance in the third degree (Penal Law §

220.16(1)).  Dkt. No. 1, Petition ("Pet.") at 2.  Petitioner raises the following grounds for

habeas relief: (1) the jury's verdict convicting him of the charges related to the third drug sale was "fatally inconsistent with" his acquittal on the charges related to the other two sales because the CI testified that the seller was the same on all three occasions; and (2) he was denied a fair trial when the court granted the prosecution's motion for a protective order with regard to the audio recordings of the transactions. Pet. at 6-7. Respondent filed a response to the petition and pertinent records from the state court proceedings. Dkt. No. 6-1, Respondent's Memorandum of Law in Opposition to the Petition for a Writ of Habeas Corpus ("R. Mem."); Dkt. Nos. 7-8, State Court Records. Respondent contends that petitioner's inconsistency claim is not cognizable on habeas review and that his claim regarding the protective order is without merit. R. Mem. at 18-25. For the reasons that follow, petitioner's claims are denied and the petition is dismissed.

## II.    RELEVANT BACKGROUND

The following background information is derived from the records provided by respondent. Petitioner was indicted on three counts of third degree criminal possession of a controlled substance, three counts of third degree criminal sale of a controlled substance, and first degree loitering (Penal Law § 240.36). Dkt. No. 7-2, Appendix to Appellant's Brief ("Appx.") at A34-37. The charges related to three occasions on which petitioner sold cocaine to a confidential informant assisting the New York State Police and City of Schenectady Police Department.

Prior to trial, petitioner, through counsel, requested in writing that the court direct the prosecution to disclose audio recordings created during the drug sales. Appx. at A46-47, Correspondence from Adam G. Parisi, Esq., to Hon. Karen A. Drago, Schenectady County Court Judge, June 10, 2009. According to counsel, the prosecution's offer to allow counsel to

listen to the recordings and to provide him with transcripts-but not to provide copies of the recordings themselves-was "not acceptable" to petitioner. *Id.* at A46. Petitioner hoped to "identify the voice of the person" who actually sold the cocaine and "voices of people other than" the buyer and seller, and to review "other noises and sounds" that may have been recorded. *Id.* Counsel asserted that he was unable to provide effective assistance if he could not listen to the recordings with petitioner. *Id.*

In response to the letter, the prosecution moved for a protective order pursuant to New York Criminal Procedure Law ("CPL") § 240.50 with respect to the audio recordings. Appx. 48-50, Motion for Protective Order and Affirmation, June 17, 2009. The prosecutor asserted that the CI was being used in other, on-going narcotics investigations, and that permitting petitioner to review the audio recordings would expose the CI's identity and "jeopardize both the safety of the [CI] and any and all on-going investigations which involve this same [CI]." *Id.* at 49-50. The prosecutor also reiterated that counsel was invited to listen to the recordings in person. *Id.* at 50. Counsel replied that any concerns regarding disclosure of the identity of the CI was "rank speculation" that, if accepted, would "improperly hamper [petitioner's] ability to defend himself and to exercise his right to counsel." Appx. at A53, Affirmation.

The Schenectady County Court granted the prosecution's request for protective order pursuant to CPL § 240.50(1).[1] Appx. at A55, Decision and Order, filed June 26, 2009. The

---

[1] This statute provides in part that "[t]he court in which the criminal action is pending may, upon motion of either party, or . . . upon determination of a motion of either party for an order of discovery . . . issue a protective order denying, limiting, conditioning, delaying or regulating discovery pursuant to this article for good cause, including . . . a substantial risk of physical harm, intimidation, economic reprisal, bribery or unjustified annoyance or embarrassment to any person or an adverse effect upon the legitimate needs of law enforcement, including the protection of the confidentiality of informants, or any other factor or set of factors which outweighs the usefulness of the discovery." CPL § 240.50(1).

court concluded that protecting the CI's identity, "both for the safety of the [CI] as well as the legitimate needs of law enforcement outweigh the usefulness of discovery." *Id.* The court also directed the prosecution to provide a copy of a transcript of the audio recordings to allow petitioner to prepare his defense. *Id.*

A jury trial commenced on November 9, 2009, at which the following evidence was adduced. In August 2008, the New York State Police ("NYSP") began working with a confidential informant ("CI") for the purpose of investigating narcotics trafficking in the City of Schenectady. Dkt. No. 8-2, Trial Transcript ("TT") at 415; *see id.* at 287-289.[2] The CI testified that he first met petitioner-who introduced himself as "Southside"- in September 2008 when petitioner and four other people visited the CI's residence. *Id.* at 416, 437, 463. The CI ran into petitioner at a gas station a couple weeks later, and petitioner gave the CI his phone number and indicated he could supply the CI with cocaine. *Id.* at 417-418. The CI relayed this information to his "handler" at the NYSP, Investigator Raymond Marrero, and three separate "buys" from petitioner were thereafter arranged. *Id.* at 418; *see id.* at 377-379. The transactions occurred in November 12, November 13, and November 19, 2008, and were carried out in a highly similar manner.

Marrero testified that, on November 12, 2008, he transported the CI to a predetermined location, strip searched him, and found no contraband. TT at 380. The CI then called petitioner, and petitioner directed the CI to meet him in the area of Chrisler Avenue[3] and Oakwood Avenue. *Id.* at 380-382, *see id.* at 418. Marrero gave the CI currency

---

[2] The trial transcript spans two separate fillings, but is consecutively paginated, and citation is to that pagination. Dkt. Nos. 8-1 and 8-2. The transcript filed at Docket Number 8-2 begins at page 370.

[3] This street is spelled "Chrysler Avenue" in the trial transcript, which, respondent advises, is incorrect. R. Mem. at 4, n. 4.

for making a purchase from petitioner and an audio transmitter to transmit and record the conversation between the CI and petitioner. *Id.* at 380, 382. Marrero drove petitioner close to the appointed meeting location, and the CI exited the vehicle and proceeded on foot to meet petitioner on Oakwood Avenue between Howard and Willett Streets. *Id.* at 293, 296, 421-423. Other investigators assisting in the operation were positioned for surveillance nearby. *Id.* at 287-292, 381, 480-482.

The CI met with petitioner, exchanged the currency for cocaine, and, after parting with petitioner, returned to Marrero's vehicle around the corner. TT at 422-427. The CI turned over the cocaine procured from petitioner, and was transported to a predetermined location, searched again, and provided a statement. *Id.* at 382-386; *see id.* at 422-428, 482-484. At trial, the CI described petitioner as wearing jeans and a hooded sweatshirt, and stated that he could see petitioner's face but not his hair because it was dark outside. *Id.* at 428. The CI also acknowledged that he had told investigators after the transaction that petitioner had braided hair. *Id.* at 465. Senior Investigator Samuel Mercado, observing nearby, described the target as a tall African American male wearing a parka and hooded sweatshirt, but stated that he could not see the target's face. *Id.* at 296-297. Investigator Frank Cameron, also surveilling the transaction, testified that he also could not see the target's face on that date. *Id.* at 503.

The next transaction, on November 13, 2008, occurred in largely the same manner. The CI was searched by Marrero, provided with currency and a transmitter, and transported to the location designated by petitioner, which was the same as the previous day. *Id.* at 391-393, 428-430, 485-487. After a brief meeting with petitioner, the CI returned to Marrero's vehicle, turned over cocaine acquired from petitioner, and was searched and debriefed at a

5

predetermined location.  *Id.* at 392-395, 430.  During the second transaction, Cameron was again unable to see the target's face, although it appeared to be the same individual from the previous meeting.  *Id.* at 486-487.

Finally, another transaction at the same location was conducted on November 19, 2008, following the same preparatory procedures between Marrero and the CI.  *See id.* at 400-402, 431-437, 489-492.  During this third transaction, however, Mercado was able to conduct his surveillance from a somewhat closer location than during the first two buys, and testified that he was able to see petitioner's face.  *Id.* at 315-318.  Mercado identified petitioner in court as the individual who met with the CI on that date.  *Id.* at 318.  Moreover, Cameron positioned himself just outside the residence from which petitioner emerged on his way to meeting the CI down the street.  *Id.* at 489-490.  He was able to see petitioner's face as petitioner left the residence, met with the CI, and returned to the residence.  *Id.* at 490-492.

On November 21, 2008, Marrero showed the CI a photo array, but the CI was unable to identify petitioner from the array.  *Id.* at 454-456; *see id.* at 469, 476.  On November 24, 2008, NYSP and Schenectady Police Department officers executed a search warrant at the residence petitioner was seen entering and exiting.  Petitioner and two other individuals, David Dickerson, and Ashley Glenn, were at the residence, and Dickerson and Glenn were sleeping in a bed, under which a handgun and currency were discovered.  *Id.* at 321-329, 493, 512, 521-525, 534-535.[4]  On December 4, 2008, the CI was able to identify petitioner

---

[4] By the same indictment, Dickerson was charged with various criminal possession of a weapon and criminal possession of a controlled substance counts, and Glenn was charged with, among other things, second degree attempted criminal possession of a weapon.  Appx. at A37-43.  After jury selection began, Dickerson pleaded guilty to several counts of the indictment related to possession of a handgun and cocaine.  Dkt. No. 8-1 at 317-322, Transcript of Appearance, November 10, 2009.

from a second photo array.  *Id.* at 471-472.

Petitioner was acquitted of all charges related to the first two transactions, but convicted of criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree with regard to the third transaction. *Id*. at 821-823.  Petitioner was sentenced to concurrent determinate terms of 12 years imprisonment and 3 years postrelease supervision.  Appx. at A30.

Petitioner filed a direct appeal and, in a counseled brief, raised the following grounds: (1) the verdict convicting petitioner of the charges related to the third transaction was "fatally inconsistent with" his acquittal on charges related to the first two transactions because the same person made all three sales, and the evidence was thus also legally insufficient and the verdict against the weight of the evidence; and (2) the court denied him a fair trial when it granted the prosecution's motion for a protective order and denied pretrial disclosure of the audio recordings of the charged transactions.  Dkt. No. 7-1, Appellate Brief, at 11-19.  With regard to his second contention, counsel cited federal and state case law concerning pretrial disclosure of the identity of an informant and asserted that "[d]isclosure of the recordings was essential to [petitioner's] ability to investigate the seller's identity and prepare a defense." Dkt. No. 7-1 at 15-20 (citing, inter alia, *United States v. Rovario*, 353 U.S. 53 (1957) and *United States v. Sea*, 859 F.2d 1067 (2d Cir. 1988)).

The Appellate Division rejected petitioner's contentions that the verdicts were legally inconsistent and against the weight of the evidence.  *People v. Johnson*, 91 A.D.3d 1194, 1195-1196 (4th Dep't 2012).  With regard to petitioner's claims related the audio recordings, the Appellate Division construed petitioner as asserting that "fundamental fairness required pretrial disclosure of the CI's *identity*," a claim the appellate court found was not raised before

7

the trial court and was thus unpreserved.  *Id.* at 1197 (emphasis added).  Noting that the CI

testified at trial and was subject to cross examination, and that petitioner was "acquitted of all

charges as to which the CI provided the only identification testimony," the appellate court held

that, "accordingly, no modification in the interest of justice is warranted." *Id.* (citing, inter alia,

CPL § 470.15 [6] [a]).

Petitioner sought leave to appeal to the New York Court of Appeal on the same

grounds, and that application was denied. Dkt. No. 7-6, Letter from Mitch Kessler, Esq. to

New York State Court of Appeals, January 30, 2012; *People v. Johnson*, 18 N.Y.3d 995

(2012).  This action followed.

## III.    DISCUSSION

### A.    Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a

federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits

in state court only if, based upon the record before the state court, the state court's decision:

(1) was contrary to, or involved an unreasonable application of, clearly established federal

law, as determined by the Supreme Court of the United States; or (2) was based on an

unreasonable determination of the facts in light of the evidence presented in the state court

proceeding.  28 U.S.C. §§ 2254(d)(1), (2); *Cullen v. Pinholster*,     U.S.   , 131 S. Ct. 1388,

1398, 1400 (2011); *Premo v. Moore*, 562 U.S. 115,    , 131 S. Ct. 733, 739 (2011); *Schiro v.

Landrigan*, 550 U.S. 465, 473 (2007).  This standard is "highly deferential" and "demands that

state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*,     U.S.   , 131

S. Ct. 1305, 1307 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)

(internal quotation marks omitted)).

8

The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*,     U.S.    , 133 S. Ct. 1990, 1992 (2003) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86,    , 131 S. Ct. 770, 786 (2011)); *see Metrish v. Lancaster*,     U.S.    , 133 S. Ct. 1781, 1787 (2013) (explaining that success in a habeas case premised on § 2254 (d)(1) requires the petitioner to "show that the challenged state-court ruling rested on 'an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'") (quoting *Richter*, 131 S. Ct. at 786-787).

Additionally, AEDPA foreclosed "'using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.'" *Parker v. Matthews*,     U.S.    , 132 S. Ct. 2148, 2149 (2012) (per curiam) (quoting *Renico*, 559 U.S. at 779).  A state court's findings are not unreasonable under § 2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion.  *Wood v. Allen*, 558 U.S. 290, 301 (2010).  "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold."  *Schiro*, 550 U.S. at 473.  Federal habeas courts must presume that the state courts' factual findings are correct unless a petitioner rebuts that presumption with "'clear and convincing evidence.'" *Schiro*, 550 U.S. at 473-474 (quoting § 2254(e)(1)).

### B.    Ground One: Inconsistent Verdict

Petitioner contends that the verdicts against him are inconsistent with his acquittal on

9

charges related to other alleged drug sales.  Pet. at 6.  "[T]he possibility that . . . inconsistent verdicts may favor the criminal defendant as well as the Government militates against review of such convictions at the defendant's behest."  *United States v. Powell*, 469 U.S. 57, 65 (1984) (citation omitted); *accord Harris v. Rivera*, 454 U.S. 339, 345 (1981) ("[I]nconsistency in a verdict is not a sufficient reason for setting it aside.  We have so held with respect to inconsistency between verdicts on separate charges against one defendant, and also with respect to verdicts that treat codefendants in a joint trial inconsistently.") (internal citations and footnotes omitted).  As discussed above, the Appellate Division found petitioner's contention to be lacking in merit.  *Johnson*, 91 A.D.3d at 1195-1196.  In any event, claims of inconsistent verdicts provide no basis for habeas relief.  *See e.g. Suarez v. Bennett*, 207 F. App'x 114, 116 (2d Cir. 2006), *cert. denied sub nom Suarez v. Lappe*, 551 U.S. 1106 (2007) (summary order) ("[W]e are not permitted to grant habeas [relief] simply because a jury's verdicts are inconsistent."); *Johnson v. Yelich*, 9:11-CV-1207 (JKS), 2013 WL 5592735, at *12 (N.D.N.Y. Oct. 10, 2013) (holding habeas petitioner not entitled to relief for alleged inconsistent verdict and citing *Powell* and *Harris*); *Baker v. Kirkpatrick*, 768 F.Supp.2d 493, 511 (W.D.N.Y. 2011) ("[I]nconsistent jury verdicts are not a ground for habeas relief.") (citations omitted); *H'Shaka v Ricks*, No. 9:07-CV-1116 (JKS), 2010 WL 1689440, at *14 (N.D.N.Y. April 27, 2010) (in advancing his claim of an inconsistent verdict, petitioner "does not present a federal constitutional claim cognizable in this Court in a federal habeas proceeding.").[5]

To the extent that the petition may be construed as asserting that the evidence was

---

[5] Relatedly, even if cognizable, petitioner's claim is unexhausted inasmuch as he cited only state case law on direct appeal and identified no constitutional principle which was implicated.  Dkt. No. 7-1 at 11-14.

legally insufficient to support the verdict, that claim is without merit.  Claims that evidence to support a conviction was legally insufficient "face a high bar in federal habeas proceedings because they are subject to two layers of judicial defence." *Coleman v. Johnson*,     U.S.    , 132 S. Ct. 2060, 2062 (2012) (per curiam).  On direct appeal, deference is owed to the jury's verdict, and, on habeas review, a federal district court may overturn a state court decision rejecting such a claim "only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Cavazos v. Smith*, 565 U.S. 1,    , 132 S. Ct. 2, 4 (2011) (per curiam) (further citation and internal quotation marks omitted)); *Renico*, 599 U.S. at 773.  A petitioner is entitled to relief on this basis only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (footnote omitted); *Cavazos*, 132 S. Ct. at 4.  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor. *Jackson*, 443 U.S. at 319; *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

Here, petitioner disputes only his identification as the drug seller during the third transaction.  Pet. at 5.  As the Appellate Division explained, "[t]he transactions were separate events that occurred on different days, and the People's proof relating to the third purchase was considerably stronger than that concerning the first two." *Johnson*, 91 A.D.3d at 1195. With regard to the third purchase, both Mercado and Cameron testified that they saw petitioner's face during his sale to the CI and identified him as the person selling cocaine on that occasion. *Id.*; *see* TT at 315-318, 489-492.  The jury could have declined to credit the testimony of the CI-the primary witness-with regard to the first two transactions, but found the additional identification testimony from other witnesses as to the third transaction more

persuasive.  This court may not reassess the jury's credibility determinations.  *See Peters v. Poole*, No. 1:03-CV-2919, 2013 WL 6048994, at *7 (E.D.N.Y. Nov. 13, 2013) (citing *U.S. v. Dozier*, 492 F. App'x 205, 206 (2d Cir. 2012)).  Thus, to the extent raised, petitioner's legal insufficiency claim is lacking in merit.  The Appellate Division's assessment of petitioner's evidence-based claims was not objectively unreasonable or contrary to clearly established Supreme Court precedent.[6]  Ground One of the petition is therefore denied and dismissed.

### C.    Ground Two: Disclosure of Audio Recordings

Petitioner claims that his right to a fair trial was violated when he was denied disclosure of the audio recordings made in the course of the drug sales for which he was charged.  Pet. at 7.  Petitioner asserts that the recordings were "essential to" preparing a defense and that the prosecution's "concerns about the [CI's] safety and the integrity of on-going narcotics investigations were too vague and speculative to justify" granting a protective order.  *Id.*

On direct appeal, counsel asserted that the audiotaped recordings should have been disclosed to permit investigation of "the identity of the seller and prepare for cross-examination of the informer[.]"  Dkt. No. 7-1 at 15-19.  The Appellate Division ruled that this argument was unpreserved for appellate review.  *Johnson*, 91 A.D.3d at 1196-97.  Although petitioner asked for disclosure of the recordings of the three drug transactions, and objected to the People's request for a protective order, he did not demand disclosure of the CI's identity or assert he needed that information to prepare for trial.  *Id.*  Instead, petitioner's

---

[6]  To the extent petitioner can be said to argue that the verdict was against the weight of the evidence, that claim is not cognizable on federal habeas review because it is derived from New York statutory law. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996); *Wright v. Duncan*, 31 F.Supp.3d 378, 424 (N.D.N.Y. 2011); CPL § 470.15(5).

assertion before the trial court was that the recordings might "enable him to identify persons other than the CI - that is, 'the person that allegedly sold the cocaine, voices of people other than the alleged purchaser and the alleged seller of the cocaine, and other noises and sounds.'"  *Id.*  Additionally, when the CI's identity was revealed before jury selection, counsel did not claim that it should have been disclosed earlier, and he did not request an "adjournment to enable him to prepare a defense before the CI testified."  *Id.*  Accordingly, the Appellate Division concluded that, pursuant to CPL 470.05(2), petitioner did not preserve his claim that the CI's identity should have been disclosed.  *Id.*  The Appellate Division also declined to review the claim in the interest of justice pursuant to CPL 470.15(6)(a) because "the CI testified at trial, [petitioner] had a full opportunity for cross-examination, and he was acquitted of all charges as to which the CI provided the only identification testimony[.]"  *Id.* at 1197.

        Ordinarily, a state court's conclusion that a claim is unpreserved for appellate review pursuant to CPL 470.05(2) constitutes an adequate and independent ground for the state court decision that bars federal habeas review of the claim absent a showing of cause for the default and resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice.  *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Gutierrez v. Smith*, 702 F.3d 103, 111 (2d Cir. 2012), *cert. denied*    U.S.    , 134 S. Ct. 439 (2013); *Whitley v. Ercole*, 642 F.3d 278, 292 (2d Cir. 2011).  In this case, however, respondent acknowledges the Appellate Division's application of CPL 470.05(2) to petitioner's claim, but "does not ask this Court to impose a procedural bar . . . because the Appellate Division's preservation ruling is incorrect, as petitioner argued in his leave application to the Court of Appeals."  R. Mem. at 22 n. 13 (citing Ex. F at 3).

13

Procedural default is not jurisdictional and therefore can be waived by the state. *Kuhali v. Reno*, 266 F.3d 93, 101 (2d Cir. 2001); *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000); *see Harris v. Senkowski*, 298 F. Supp. 2d 320, 336 (E.D.N.Y. Jan. 8, 2004) ("apparently satisfied that Harris' pro se submissions to the state courts were intended to question the effectiveness of his counsel at the *Wade* hearing and the trial, respondent has chosen not to claim that the ineffective assistance of trial counsel issue is unexhausted or procedurally barred."). Under the circumstances, the Court will address the merits of petitioner's claim. *See Cox v. Lee*, No. 6:11-CV-6525, 2014 WL 6685521 at *6 (W.D.N.Y. Nov. 26, 2014) ("it appears the Appellate Division misread the record in concluding that certain claims were unpreserved by objection. Rather than resolve this potentially complex procedural default issue, the Court will proceed to a consideration of the merits of Petitioner's prosecutorial misconduct claim.").

With regard to the identity of confidential informants, the Supreme Court has explained that "no fixed rule with respect to disclosure is justifiable." *Roviaro v. U.S.*, 353 U.S. 53, 62 (1957). This issue "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." *Id*. Whether nondisclosure constitutes error "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Id.* The party seeking disclosure must "show that information that the CI could have provided, or information related to either the CI's identity or the CI's absence from trial, would have been 'relevant' or 'material' to his defense." *Morales v. Strack*, 116 F. App'x 293, 294 (2d Cir. 2004) (summary order) (quoting *DiBlasio v. Keane*, 932 F.2d 1038, 1041-1042 (2d Cir. 1991)); *accord Vega v. Walsh*, 258 F. App'x 356, 359 (2d

14

Cir. 2007); *United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988), *cert. denied* 489 U.S. 1089 (1989). "[I]t is not sufficient to show that the informant was a participant in and witness to the crime charged." *Saa*, 859 F.2d at 1073. It must be established that "the informant 'would have been of even marginal value to the defendant's case.'" *Id.* (quoting *United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986)).

In this case, counsel sought the audio recordings of the transactions and asserted only that they "may be significant to" petitioner, who "may be able to" identify voices and "other noises and sounds" captured on the recording. Appx. at A46. Counsel further contended that information on the recordings "may be exculpatory or lead to discovery of exculpatory information." *Id.* But these arguments are, by their own terms, entirely speculative, and provided no indication that the information sought would have been of value to petitioner's unspecified defense. *Cf. DiBlasio*, 932 F.2d at 1043 (noting that defendant, who took the stand and testified he was induced to commit a crime, "did more than posit the possibility" he was entrapped, and holding that disclosure of informant's name was required permit exploration of that defense). That the information "could merely have cast doubt on the general credibility of one of the Government's witnesses . . . 'is normally an insufficient basis to overcome the informant's privilege.'" *Saa*, 859 F.2d at 1073 (quoting *United States v. Russotti*, 746 F.2d 945, 950 (2d Cir. 1984)). Weighed against the prosecution's assertion that the recordings would "expose the identity of" the CI and jeopardize other ongoing investigations in which he was actually participating, Appx. at 49-50, it cannot be said that the denial of pretrial disclosure of the audio recordings violated petitioner's constitutional rights. Moreover, as the Appellate Division explained, the CI testified at trial and was extensively cross-examined, and petitioner was acquitted of the charges upon which the CI was the

primary eyewitness.  *Johnson*, 91 A.D.3d at 1197; s*ee generally Morales*, 116 F. App'x at 294-295 (state trial court's denial of disclosure of informant's identity did not violate petitioner's right to present a defense, and, "at the very least," did not constitute an unreasonable application of, inter alia, *Roviaro*) (citing 28 U.S.C. § 2254(d)(1)).

Based upon the foregoing, petitioner's claim that he was denied a fair trial because the recordings were not disclosed to him does not warrant habeas relief.  Ground Two fo the petition is therefore denied and dismissed.

## IV.     CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED** that the petition, Dkt. No. 1, is **DENIED AND DISMISSED** in its entirety; and it is further

**ORDERED** that no Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[7] and it is further

**ORDERED** that the Clerk serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**.

Dated: February 19, 2015
       Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court

---

[7] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).